Colin Gerstner
Paul Adam
GERSTNER ADAM LAW PLLC
2828 1st Ave. S.
Billings, MT 59101
(406) 969-3100
colin@gerstneradamlaw.com
paul@gerstneradamlaw.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| DUANE MICHAEL,<br><br>Plaintiff,<br><br>-vs-<br><br>DANIELS COUNTY and DUANE ANDERSON,<br><br>Defendants. | Cause No.  CV-24-56-GF-BMM<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Duane Michael alleges and complains as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331, as some of the claims arise under the Constitution and laws of the United States. The Court also has jurisdiction under 28 U.S.C. § 1343, as Michael seeks redress for the deprivation (under color of state law, statute, ordinance, regulation, custom, or usage) of his rights, privileges, and

immunities secured by the Constitution of the United States and/or Acts of Congress.

2. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Michael's state law claims as they are so related to the claim in the action within the original jurisdiction that they form part of the same case or controversy.

3. In addition, this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

4. Plaintiff Duane Michael is currently a citizen of the State of Washington.

5. Defendant Daniels County is a political subdivision organized under Montana law.

6. Defendant Duane Anderson is a citizen of Montana.

7. Venue is proper in this District because a substantial part of the events or omissions giving rise to this claim occurred in Montana. 28 U.S.C. § 1391(b)(2). In addition, venue is proper in the Great Falls Division pursuant to Montana law. LR 3.2(b); Mont. Code Ann. § 25-2-122(1). The alleged torts occurred in Daniels County and Valley County, Montana.

8. This Court has personal jurisdiction over Daniels County and Duane Anderson.

## FACTUAL ALLEGATIONS

9. In April 2022, Plaintiff Duane Michael ("Michael") and his then-wife Dayna Michael ("Dayna") moved to Scobey, Daniels County. Michael was employed with United States Customs and Border Protection ("CBP"), and he was assigned to work at the Port of Scobey.

10. At the time, Defendant Duane Anderson ("Sheriff Anderson") was the Sheriff of Daniels County.

11. In the summer of 2022, Sheriff Anderson began having an intimate relationship with Dayna.

12. While Sheriff Anderson was having an affair with Dayna, Sheriff Anderson used his position as Sheriff to launch a harassment campaign against Michael.

13. For example, while Michael was at work, three Sheriff's Deputies arrived at the port and told Michael that he was not allowed in his house for the next 72 hours. A deputy told Michael that Sheriff Anderson responded to Michael's home earlier that day to investigate allegations of domestic violence. Michael did not assault Dayna, nor were there any credible allegations that there was any violence by Michael towards anybody. When Michael asked what law prevented him from going to his house, the deputies could not provide an answer. Michael could tell by his Life 360 app that

Dayna was at Sheriff Anderson's house, so the deputies accompanied Michael to his home. When they got there, Michael's belongings had already been boxed up and placed in his car. Michael moved into a residence at the Port of Scobey owned by CBP.

14. Several weeks later, on September 9, 2022, Michael returned to his house to get more of his belongings. Sheriff Anderson and a deputy arrived at the house shortly after Michael got there. Michael and Sheriff Anderson got into a heated conversation. Sheriff Anderson said, "You want to go, you want to make this personal?" Michael went into the house, and when he came back out, Sheriff Anderson had removed his gun and his badge from his belt. Michael yelled, "You being here with your gun and badge is intimidating the hell out of me." Michael then left.

15. On another occasion, Michael went to pick up his daughter from school. Michael anticipated issues with Dayna and Sheriff Anderson if he went to the school, so he let deputies know ahead of time about his intention to visit the school. When Michael pulled up to the school, he saw Sheriff Anderson parked by the school and standing outside his patrol truck. A deputy was also at the school. Michael stayed in his vehicle, and the deputy walked up to Michael and said, "Well you were right." The deputy then told Michael that Sheriff Anderson had instructed the deputy to come to the school and

watch Michael. Dayna arrived and came to talk to Michael. The two got into an argument, and Dayna and Michael both walked over to their daughter as she was exiting the school. The deputy followed Michael as he walked. Dayna ended up leaving with their daughter.

16. The next morning, Michael went to the school in an attempt to see his daughter. When he arrived, Sheriff Anderson was at the school. Michael started walking to the school's front door, and Sheriff Anderson started following and yelling at him that he needed to serve Michael with papers. Michael eventually stopped, and Sheriff Anderson produced a document from the Daniels County Sheriff's Office that was titled, "No Contact Order/Stalking Notice."

17. The Daniels County Sheriff's Office has no authority to issue such an order. Under Montana law, only a court can issue a restraining order.

18. Michael went into the school, but a school official told Michael that given the circumstances, he was not comfortable with Michael seeing his daughter at the school. Michael said he understood and left. After Michael exited the school, he walked towards Sheriff Anderson. When Michael was about 20 feet away, Sheriff Anderson placed his hand on his gun. Michael changed directions and went to his vehicle. Michael drove off as Dayna was outside speaking with Sheriff Anderson.

19. Later, Michael was at the house owned by CBP when two Daniels County Sherrif's vehicles drove towards the port. Two deputies exited while Sheriff Anderson remained inside his vehicle. The deputies knocked on his door, but Michael did not answer. After Sheriff Anderson and the deputies left, Michael exited the house and walked to the main port office. There, Michael's supervisor told him that Sheriff Anderson was looking to arrest him.

20. When the port closed for the night and CBP officers had left, Michael saw headlights coming down the road towards the port. Michael was prepared to be arrested, so he walked outside in case it was Sheriff Anderson or a deputy coming. When he was outside, Michael's CBP supervisor appeared and told Michael that he returned to the port when he saw a Daniels County Sheriff's vehicle on a side road near the port. While Michael and his supervisor were standing outside, Sheriff Anderson drove to the port. He slowly drove into the driveway and asked, "Where have you been?" Sheriff Anderson then rolled up his window, backed his truck out of the driveway and left. No deputies came later to arrest Michael.

21. Michael's supervisor decided it would not be safe to stay at the port house alone. Before taking Michael to another CBP Officers house, the supervisor called the Daniels County Sheriff's Office to see if there was a warrant for

his arrest. Deputies informed him that there was no warrant for Michael's arrest, so he was free to leave. Michael left, and he stayed at another CBP officers' residence.

22. For the next several days, Michael was always in the company of other CBP officers, either in their homes or at the port.

23. The Port of Scobey got a call from Daniels County dispatch who wanted to know Michael's location. CBP refused to give that information. Dispatch told CBP they needed to know where Michael was, as they received an anonymous call that Michael had violated a non-contact order by appearing at the Scobey School that morning. That alarmed CBP, as they knew it was not possible for Michael to have been at the school. CBP Decided to temporarily relocate Michael to another port outside of Daniels County for his safety. Multiple CBP officers drove Michael out of Scobey in "convoy fashion" to his new post. Deputies later appeared at the Port of Scobey to attempt to serve Michael with a temporary order of protection. CBP officers continued to refuse to disclose Michael's location, even after threats of criminal charges for obstructing a police officer.

24. A Daniels County Sheriff's Deputy left Michael a voicemail that stated they left a temporary order of protection taped to his house at the port. A friend

scanned and sent the order of protection to Michael, and he was devasted to see that it was based on fabrications by Dayna.

25. Daniels County Sheriff's Office contacted the Sheridan County Sheriff's Office and requested help serving Michael with the restraining order. Sheridan County never served Michael.

26. After several weeks, Michael returned the residence at the Port of Scobey. On November 2, 2022, Michael was driving and saw Sheriff Anderson following him. Michael got home and watched Sheriff Anderson from the window. Sheriff Anderson sat outside of Michael's home for 15 minutes before leaving.

27. On December 14, 2022, Michael was driving in Scobey when he saw Danya's vehicle parked outside a bar. When Michael passed Danya's vehicle, it performed a U-turn and started following him. Scared for his safety and seeking to avoid a confrontation, Michael started driving toward Opheim, Montana, which is in Valley County. Dayna's vehicle followed Michael for about 70 miles in blizzard conditions.

28. Dayna was driving her vehicle, and Sheriff Anderson was in the passenger seat. While Dayna was following Michael, Sheriff Anderson called Valley County dispatch and stated that he was following a vehicle that had been driving in the wrong lane. Valley County Deputy Jesse Moon was

dispatched to investigate. While enroute, Deputy Moon called Sheriff Anderson, and Sheriff Anderson explained to Deputy Moon that the Michael needed to be arrested for violating a protection order.

29. Deputy Moon continued to the area through slippery roads and low visibility due to blowing snow. He caught up to Michael's and Dayna's vehicles. Sheriff Anderson told Deputy Moon that Michael's car was the suspect vehicle, so Deputy Moon initiated a traffic stop. Both Michael and Dayna pulled over.

30. When Deputy Moon explained that he was pulling him over due to a report of Michael driving outside of his lane of traffic, Michael explained that he occasionally drove on the center of the road due to large drifts of snow on the highway. Michael explained that he noticed that his ex-wife's vehicle was following him, and that Michael did not want her to know where he lived. Deputy Moon did a warrant check on Michael and discovered that there were no warrants for Michael.

31. Deputy Moon went to speak with Sheriff Anderson. Deputy Moon could smell alcohol coming from the vehicle. Dayna did not appear intoxicated, but Sheriff Anderson slurred his words and admitted to having "a few drinks." Sheriff Anderson stated that there were charges against Michael, and he asked Deputy Moon to take Michael into custody on these charges.

Deputy Moon explained to Sheriff Anderson that he could not do that without an active warrant. Sheriff Anderson claimed to have "started a pursuit in my county" and pleaded with Deputy Moon to arrest Michael. Deputy Moon refused and told Sheriff Anderson that he was going to release Michael because the traffic stop had already gone on too long. Deputy Moon told Sheriff Anderson that the situation was highly unusual, as Sheriff Anderson was with Michael's ex-wife and had followed him for 80 miles. Sheriff Anderson again asked Deputy Moon to arrest Michael. Deputy Moon again refused and told Sheriff Anderson to speak to the Valley County Sheriff if he thought Deputy Moon was wrong. Dayna asked Deputy Moon to give her Michael's address, which Deputy Moon refused to do.

32. Michael eventually had enough of the harassment and left Montana. He moved to Washington, where he currently lives and works.

33. On February 1, 2023, the State of Montana charged Sheriff Anderson with one count of Official Misconduct in violation of Mont. Code Ann. § 45-7-401(1)(c). On April 11, 2023, the State agreed to dismiss the charge in exchange for Sheriff Anderson's resignation. Sheriff Anderson resigned effective immediately, and the District Court dismissed the charge.

34. It was later revealed that Sheriff Anderson had a standing order within his office to arrest Michael on sight, even though there was never a warrant to justify his arrest.

## COUNT ONE
**(42 U.S.C. § 1983 against Duane Anderson for violation of due process)**

35. At all relevant times, Sheriff Anderson acted under color of law, statute, ordinances, rules, regulations, and customs, practices, and/or usages of the Daniels County Sheriff's Office.

36. Sheriff Anderson used his position to harass and make Michael's life miserable. Sheriff Anderson had no legal basis to torment Michael. Instead, Sheriff Anderson's motivations were borne from his relationship with Michael's wife.

37. The Fourteenth Amendment to the U.S. Constitution protects against the deprivation of "life, liberty, or property, without due process of law." Sheriff Anderson, while acting under color of law, violated Michael's substantive due process rights.

38. Because of Sheriff Anderson's constitutional violations, Michael has suffered damages.

39. Sheriff Anderson acted with actual malice, as that term is defined by Mont. Code Ann. § 27-1-221.

## COUNT TWO
## (42 U.S.C. § 1983 against Duane Anderson for unreasonable seizures)

40. At all relevant times, Sheriff Anderson acted under color of law, statute, ordinances, rules, regulations, and customs, practices, and/or usages of the Daniels County Sheriff's Office.

41. The Fourth Amendment to the U.S. Constitution guarantees the right to be free from unreasonable seizures.

42. Sheriff Anderson unlawfully used his position to "seize" Michael as that term is used in the Fourth Amendment.

43. For example, Sheriff Anderson cause an unlawful seizure on December 14, 2022, when he relayed false information to the Valley County Sheriff's Office that resulted in Michael being pulled over.

44. Sheriff Anderson also "seized" Michael on other occasions without probable cause, such as when he stopped Michael to hand him the unlawful "No Contact Order" issued from his office.

45. Because of Sheriff Anderson's constitutional violations, Michael has suffered damages.

46. Sheriff Anderson acted with actual malice, as that term is defined by Mont. Code Ann. § 27-1-221.

## COUNT THREE
### (Negligence against both Defendants)

47. Defendants owed Michael a duty of reasonable care. In acting out their functions as law enforcement officers and entities, Sheriff Anderson, Sheriff Anderson's supervisors, and the deputies of the Daniels County Sheriff's Office were required to preserve Michael's constitutional, statutory, and common law rights.

48. At all times, Sheriff Anderson and his deputies were acting in the course and scope of their employment with Daniels County.

49. Sheriff Anderson was either an actual agent or ostensible agent of Daniels County.

50. Defendants breached their duty of care to Michael. They breached their duty by, but not necessarily limited to their harassment of Michael; negligent training and supervision; negligent performance of official duties; and negligent enactment, enforcement, and violation of law enforcement policies and procedures.

51. As a result of Defendants' negligence, Michael suffered damages.

## COUNT FOUR
### (Intentional Infliction of Emotional Distress against both Defendants)

52. Sheriff Anderson's intentional acts caused Michael to suffer emotional distress.

53. Michael's emotional distress was so severe that no reasonable person could have been expected to endure it.

54. Michael's emotional distress was a foreseeable consequence of Sheriff Anderson's conduct.

55. Sheriff Anderson acted with actual malice, as that term is defined by Mont. Code Ann. § 27-1-221.

56. Sheriff Anderson was acting in the course and scope of their employment with Daniels County.

57. Sheriff Anderson was acting as either an actual agent or ostensible agent of Daniels County.

## COUNT FIVE
**(Negligent Infliction of Emotional Distress against both Defendants)**

58. The negligent acts of Sheriff Anderson and the deputies of the Daniels County Sheriff's Office caused Michael to suffer emotional distress.

59. Michael's emotional distress was so severe that no reasonable person could have been expected to endure it.

60. Michael's emotional distress was a foreseeable consequence of Sheriff Anderson's and his deputies' conduct.

61. Sheriff Anderson and the deputies were acting in the course and scope of their employment and were agents of Daniels County.

## COUNT SIX
### (Seduction and Enticement in violation of Mont. Code Ann. §§ 27-1-514 and 27-1-515)

62. Sheriff Anderson initiated a sexual relationship with Dayna while she was married to Michael.

63. After discovering the relationship, Michael and Dayna separated. Their divorce was not finalized until May 15, 2024.

64. Montana law forbids the seduction of another's spouse. Mont. Code Ann. § 27-1-514(1).

65. Montana law also forbids the "enticement of a wife from the wife's husband." Mont. Code Ann. § 27-1-515(2).

66. Sheriff Anderson's seduction and enticement of Dayna has caused Michael to suffer damages.

WHEREFORE, Duane Michael requests the following relief against all Defendants, jointly and severally (except for punitive damages):

1. Compensatory damages to Michael in an amount to be proven at trial;

2. Punitive damages against Sheriff Anderson in an amount to be proven at trial;

3. Reasonable attorney fees and costs as allowed under state or federal law; and

4. Any other relief that the Court may deem just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Michael demands a trial by jury on all issues triable by right of jury.

DATED this 19th day of June, 2024.

                              GERSTNER ADAM LAW PLLC

                              /s/ Colin Gerstner
                              By: Colin Gerstner
                              Attorneys for the Plaintiff